Dear Chief Turcotte:
As Chief of Police for the City of Cedar Grove, you have asked for my opinion on substantially the following questions:
1. Pursuant to Chapter 849, Florida Statutes, who is authorized to determine what constitutes illegal gambling and what constitutes an illegal gambling device?
2. Does the Tel-Connect telephone card game sweepstakes violate the provisions of Chapter 849, Florida Statutes?
3. Does correspondence from the Department of Agriculture and Consumer Services issuing a permit and collecting taxes on the operation of such a sweepstakes create a false sense of legal operation?
According to information you have submitted, several local establishments are conducting "Calling Card Sweepstakes" (the sweepstakes) as developed by Phone-Sweeps, LLC. The rules and regulations for the sweepstakes have been provided with your letter and describe the operation of this program. Briefly, the game operates by awarding sweepstakes entries when purchasing long distance phone time on a Phone-Sweeps Phone Card ("Tel-Connect") or by completing a free entry form and submitting it based on the rules of entry. For each dollar spent on the services, the purchaser receives free sweepstakes points which can be redeemed to play the sweepstakes games. The sweepstakes games are displayed on an interactive computer terminal, the object of which is to line up various symbols and characters in a winning combination. Each ticket contains a configuration of 3 to 25 symbols; winning combinations of which entitle the bearer to money prizes ranging in value from $1.00 to $1,000.00. Each terminal communicates with a server, which causes the terminal's screen to display whether the participant has won any "win credits" which can be redeemed for cash or prizes. According to information you have supplied, whether the participant wins is determined by the server by randomly selecting the next ticket from a predetermined pool of tickets.
Question One
Florida's gambling laws, contained in Chapter 849, Florida Statutes, are criminal in nature and therefore, must be enforced by local law enforcement agencies and prosecuted by the State Attorney's Office in the appropriate judicial circuit.[1]
Question Two
Section 849.08, Florida Statutes, provides:
"Whoever plays or engages in any game at cards, keno, roulette, faro or other game of chance, at any place, by any device whatever, for money or other thing of value, shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083."
Pursuant to section 849.15, Florida Statutes, it is unlawful to possess or permit the operation of any machine or device that satisfies the description provided in section 849.16, Florida Statutes. Section849.16 describes the prohibited machines or devices in the following terms:
"(1) Any machine or device is a slot machine or device within the provisions of this chapter if it is one that is adapted for use in such a way that, as a result of the insertion of any piece of money, coin, or other object, such machine or device is caused to operate or may be operated and if the user, by reason of any element of chance or of any other outcome of such operation unpredictable by him or her, may:
(a) Receive or become entitled to receive any piece of money, credit, allowance, or thing of value, or any check, slug, token, or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance, or thing of value or which may be given in trade; or
(b) Secure additional chances or rights to use such machine, apparatus, or device, even though it may, in addition to any element of chance or unpredictable outcome of such operation, also sell, deliver, or present some merchandise, indication of weight, entertainment, or other thing of value."[2]
Thus, if the receipt of a prize is dependent on any element of chance, the machine would fall within the above definition of a slot machine proscribed by section 849.15, Florida Statutes.[3]
The Florida Supreme Court and this office have previously determined that the incidental delivery of merchandise will not remove a machine from the proscriptions of section 849.15, Florida Statutes.[4] InDeeb v. Stoutamire, the Florida Supreme Court considered the statutory definition of a slot machine:
"The law denouncing slot machines defines them as devices so adapted that `as a result of the insertion' of a coin they are `caused to operate or may be operated, and by reason of any element of chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any . . . thing of value' or anything which may be exchanged for something of value, such as money or merchandise, `or the user may secure additional . . . rights' to play,`even though [the machine] may, in addition to any element of chance orunpredictable outcome' deliver merchandise or entertainment."
(e.s.)[5]
The Court identified slot machines by referring to the chance or unpredictability of the mechanism. While the statutory definition of slot machines has been amended since the Deeb decision, these amendments do not appear to have affected the operative language of the Court's holding in Deeb. Indeed, after the statutory amendment, the district court in State, Department of Business and Professional Regulation,Division of Alcoholic Beverages v. Broward Vending, Inc.,[6] relied on the Deeb decision in reversing the lower court's ruling that a game machine in which skill was a significant factor in operating and winning did not violate the statute. Rather, the district court held that where chance is an element of the game, section 849.15, Florida Statutes, is violated:
"In the instant case, the owner of the machine admitted that chance is an element of the game. Indeed, if a player does not manipulate the levers to improve the score, the machine is preset for the player to win 55% of the time, although that percentage could be modified by an adjustment of the machine. While skill will significantly improve the player's winning percentage, it does not eliminate the element of chance in the machine itself. The machine is not like the bowling machine, which requires solely the skill of the player to slide the puck and knock down the pins, the machine merely tabulating the score. Here, the game is set to play itself and to record a certain win/loss ratio. Thus, the element of chance is inherent in the game."
The rationale of Deeb requires a reversal of the order of the trial court.[7]
Your letter to this office advises that "[a] predetermined number of winners will be selected from a continuous random drawing from among all eligible entries received throughout the sweepstakes period." This would appear to represent an element of chance. If the Tel-Phone game does contain an element of chance inherent in the machine which determines the outcome of the game, it may be characterized as a slot machine within the meaning of section 849.15, Florida Statutes.
Further, this office concluded in Attorney General's Opinion 98-07 that the purchase of a card with an attendant ticket for a sweepstakes attached which awards prizes by chance constitutes a lottery pursuant to section 849.09, Florida Statutes. Your description of the operation of the Tel-Connect sweepstakes is substantially similar and would appear to suffer from the same legal difficulties.
Finally, your letter suggests that the crime of operating an illegal gambling house has been alleged to have occurred. The Florida Statutes contain a prohibition against keeping a gambling house. Section 849.01, Florida Statutes, states:
"Whoever by herself or himself, her or his servant clerk or agent, or in any other manner has, keeps, exercises or maintains a gaming table or room, or gaming implements or apparatus, or house, booth, tent, shelter or other place for the purpose of gaming or gambling or in any place of which she or he may directly or indirectly have charge, control or management, either exclusively or with others, procures, suffers or permits any person to play for money or other valuable thing at any game whatever, whether heretofore prohibited or not, shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s.775.083, or s. 775.084."
Question Three
You have inquired whether a letter from the Department of Agriculture and Consumer Services to the promoter of "Calling Card Sweepstakes G-2" relating to the filing for a game promotion reflects some determination of legality by that department relating to the operation of this game. Questions about the actions of the Department of Agriculture and Consumer Services should be directed to that agency for their comment; this office will not comment on the actions of other executive branch agencies.
However, I would note that the letter to which you refer contains the following statement: "This filing notice may not be construed as an endorsement, approval, or recommendation of the promotion by the Department." The Department of Agriculture and Consumer Services is charged with processing filing documents for game promotions. Communications from that office seem to clearly advise the recipient that the fact that their filing documents have been reviewed and found complete by that office does not mean that the promotion or game is legal and in compliance with the provisions of Chapter 849, Florida Statutes.
Section 849.094(1)(a), Florida Statutes, relating to game promotions in connection with the sale of consumer products or services defines a "Game promotion" as:
"[A] contest, game of chance, or gift enterprise, conducted within or throughout the state and other states in connection with the sale of consumer products or services, and in which the elements of chance and prize are present. However, `game promotion' shall not be construed to apply to bingo games conducted pursuant to s. 849.0931."
As discussed above, the machine or device that is the subject of your inquiry may be a gambling device within the scope of section 849.16, Florida Statutes. Moreover, the sweepstakes involved may be a lottery. Both of these enterprises are illegal in the State of Florida.[8]
Gambling activities may not be disguised as a "game promotion" under the terms of section 849.094, Florida Statutes, in an effort to avoid the criminal sanctions attendant to violations of Florida's gambling laws.
In sum, it is my opinion that a determination of whether a particular game or contest violates the provisions of Chapter 849, Florida Statutes, is initially, a determination that must be made by local law enforcement based on the particular facts of each case. If the Tel-Phone game does contain an element of chance inherent in the machine which determines the outcome of the game, the game may be characterized as a slot machine within the meaning of section 849.15, Florida Statutes. However, this office recognizes that the ultimate determination of whether Florida's gambling laws may have been violated must be made by local law enforcement agencies.
Sincerely,
 Bill McCollum Attorney General
BM/tgh
[1] See, e.g., s. 849.01, Fla. Stat. (keeping a gambling house); s. 849. 08, Fla. Stat. (gambling); s. 849.086, Fla. Stat. (cardrooms); and s. 849.09, Fla. Stat. (lotteries).
[2] Compare, s. 551.102(8), Fla. Stat., defining "Slot machine" for purposes of Ch. 551, Fla. Stat., which authorizes slot machine gaming under certain conditions in Miami-Dade County or Broward County.
[3] Section 849.161, Fla. Stat., provides an exception to the statutory proscription for arcade amusement centers and truck stops which have certain coin-operated amusement games or machines which operate by the insertion of a coin and which by the skill of the player may entitle the person playing or operating the game or machine to receive points or coupons which can then be exchanged for certain types of merchandise with a value of no more than 75 cents.
[4] See Deeb v. Stoutamire, 53 So. 2d 873, 874 (Fla. 1951); Ops. Atty. Gen. Fla. 89-05 (1989), in which this office determined that a coin-operated "crane game" qualifies as a slot machine or device within the meaning of Ch. 849, Fla. Stat.; 98-07 (1998), concluding that a machine dispensing telephone cards which also included a sweepstakes ticket was a slot machine.
[5] 53 So. 2d 873, 874 (Fla. 1951).
[6] 696 So. 2d 851 (Fla. 4th DCA 1997).
[7] Id. at 852.
[8] See ss. 849.09(2) — (4), Fla. Stat., setting the criminal penalties for violation of the statute prohibiting lotteries; s. 849.23, Fla. Stat., describing the penalty for violations of ss. 849.15 —849.22, Fla. Stat.